IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHNNY QUIÑONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL NO. 03-577-MJR |
| ) | |
| CHARLES R. GILKEY, DR. LABORE, ) | |
| HARRELL WATTS, G.L. ) | |
| HERSHBERGER, DR. DAWDY and ) | |
| UNKNOWN PARTIES M-Z, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

Plaintiff, currently an inmate in the U.S.P. in Atwater, California, brings this action for alleged violations of his constitutional rights by persons acting under the color of federal authority. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Plaintiff previously was granted leave to proceed *in forma pauperis*, and he has tendered his initial partial filing fee as ordered.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; this action is legally frivolous and thus subject to summary dismissal.

In September 1997, Plaintiff fell and injured his left knee while performing his work duties when he was incarcerated in the Federal Correctional Institution in Waseca, Minnesota. After a medical examination, he was prescribed pain medication. X-rays were taken at a follow-up visit to the medical unit in October; the x-rays revealed "no abnormality," and Plaintiff was prescribed more pain medication. Over the next several months, and then years, Plaintiff continued to complain of knee pain. He was provided with a knee brace and pain medication, but further examinations did not indicate the need for further treatment.

In December 1998, Plaintiff arrived at F.C.I. Greenville. He was examined by Defendant Dawdy the next month; Plaintiff states that he complained to Dawdy at that time about knee pain. More x-rays were taken in February 1999, again revealing no abnormality in his left knee. The regimen of pain medication continued and, in September 1999, new x-rays revealed "minimal degenerative change" and "mild suprapetellar joint effusion" (Doc. 1, ¶ 42). Plaintiff's pain persisted and, in March 2000, an MRI was done of Plaintiff's knee. That test revealed an old ligament tear, but "[n]o significant joint effusion" (Doc. 1, ¶ 60). Despite this diagnosis, Plaintiff's knee pain persisted.

In May 2000, a specialist recommended surgery, but surgery was not scheduled. Throughout the remainder of 2000, Plaintiff continued to experience pain in his knee. Pain medication was continually prescribed but in November 2000, in response to a grievance he filed, he received word

that surgery would not be scheduled for his knee.  He appealed that decision to Gilkey; Gilkey's response was that Plaintiff's surgery would not be scheduled due to other necessary surgery that took higher priority (Doc. 1, ¶ 89).[1]  Plaintiff appealed that decision to Hershberger, but his appeal was denied.  Likewise, his appeal of Hershberger's decision was denied by Watts.  In January 2001, Plaintiff spoke with Defendant Labore about the pain in his knee and the need for surgery.  Labore reiterated the prior decisions that surgery was not going to be scheduled.

In May 2001, Plaintiff was released from federal custody.  However, upon a violation of supervised release, he was taken into custody again within 60 days; he was then held for approximately 90 days in the MCC in San Diego. After that 90 days, he was once again released.  In February 2002, upon filing of new federal charges, Plaintiff was once again in federal custody, where he was held in the MCC in San Diego.  Doctors at the MCC agreed with him that surgery should be scheduled for his knee.  Pain medication was prescribed and, on May 29, 2002, surgery was performed on his left knee.[2]

Although the facts provided in the complaint are detailed, the legal basis for this action is quite simple: Plaintiff alleges that by failing to provide adequate medical treatment for his knee, Defendants at Greenville violated his constitutional rights.

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994).  This encompasses a

---

[1] Apparently Plaintiff was scheduled for a hemorrohiodectomy (*see* ¶ 103), a medical problem that is not the subject of this case.

[2] Post-surgical treatment followed at various facilities, none of which is the subject of this lawsuit.

broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle,* 429 U.S. at 106. *See also Jones v. Simek,* 193 F.3d 485, 489 (7th Cir. 1999); *Steele v. Choi*, 82 F.3d 175, 178 (7th Cir. 1996), *cert. denied,* 519 U.S. 897 (1996).

> A prisoner raising an Eighth Amendment claim against a prison official therefore must satisfy two requirements. The first one is an objective standard: "[T]he deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at ----, 114 S.Ct. at 1977. As the Court explained in *Farmer*, "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* The second requirement is a subjective one: "[A] prison official must have a 'sufficiently culpable state of mind,'" one that the Court has defined as "deliberate indifference." *Id; see Hudson v. McMillian*, 503 U.S. 1, 5, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992) ("[T]he appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited 'deliberate indifference.'"); *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'").

*Vance v. Peters,* 97 F.3d 987, 991-992 (7th Cir. 1996), *cert. denied,* 520 U.S. 1230 (1997). However, the Supreme Court stressed that this test is not an insurmountable hurdle for inmates raising Eighth Amendment claims:

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.... Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer,* 511 U.S. at 842.

The Seventh Circuit's decisions following this standard for deliberate indifference in the

denial or delay of medical care require evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm. The Circuit also recognizes that a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation.

> Neglect of a prisoner's health becomes a violation of the Eighth Amendment only if the prison official named as defendant is deliberately indifferent to the prisoner's health – that is, only if he 'knows of and disregards an excessive risk to inmate health or safety.'

*Williams v. O'Leary*, 55 F.3d 320, 324 (7th Cir.), *cert. denied,* 516 U.S. 993 (1995); *see also Steele*, 82 F.3d at 179 (concluding there was insufficient evidence of doctor's knowledge of serious medical risk or of his deliberate indifference to that risk; emphasizing that even malpractice is not enough proof under *Farmer*); *Miller v. Neathery*, 52 F.3d 634, 638-39 (7th Cir. 1995) (applying *Farmer* mandate in jury instruction). However, a plaintiff inmate need not prove that a defendant intended the harm that ultimately transpired or believed the harm would occur. *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996). Further, with respect to the subjective element, Seventh Circuit has frequently noted that "medical malpractice in the form of an incorrect diagnosis or improper treatment does not state an Eighth Amendment claim." *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997). *See also Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996) ( "Mere negligence or even gross negligence does not constitute deliberate indifference.").

From the facts alleged, as summarized above, it is clear that Defendants were not deliberately indifferent to Plaintiff's medical needs. Although 20-20 hindsight might support Plaintiff's belief that surgery should have been performed prior to May 2002, none of Plaintiff's allegations suggest that any defendant acted with deliberate indifference. Although the Court empathizes with Plaintiff

for the problems he experienced with his knee, he simply has not presented a viable constitutional claim against any named defendant.

In summary, Plaintiff's complaint does not survive review under § 1915A. Accordingly, this action is **DISMISSED** with prejudice.

Plaintiff is **ADVISED** that the dismissal of this action *should* be counted as one of his three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g), but at this time the Court will *not* assess the strike. Instead, the Court **CERTIFIES** that any appeal from this decision would not be taken in good faith; thus, the Court will not grant Plaintiff leave to proceed *in forma pauperis* on appeal. *See* 28 U.S.C. § 1915(a)(3). Should Plaintiff choose to appeal despite this ruling, Plaintiff shall be required to pay the full $255 appellate fee in advance, and the Court will then have no choice but to assess the strike for this dismissal.

**IT IS SO ORDERED.**

**DATED this 6th day of June, 2005.**

**s/ Michael J. Reagan**
**MICHAEL J. REAGAN**
**United States District Judge**